

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed November 15, 2006

United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ELIJAH LEONARD HILL, SR. and | § | CASE NO. 04-92013-RFN-13 |
| CATHY ANNETTE HILL, | § | |
| | § | |
| Debtors. | § | |

### SUPPLEMENTAL FINDINGS AND CONCLUSIONS
### ON DEBTORS' MOTION TO EXTEND AUTOMATIC STAY

The following findings and conclusions supplement the findings and conclusions made by the court on the record at the hearing on the debtors' Motion to Extend Automatic Stay, the hearing on which was conducted on October 25 and October 31, 2006. The motion before the court is the debtors' second motion requesting that the court reinstate the automatic stay, notwithstanding the debtors' default under an agreed order with Ocwen Loan Servicing, LLC.

After filing their bankruptcy petition, the debtors defaulted on post-petition mortgage payments to Ocwen. This prompted Ocwen to file a motion for relief from stay. The motion

was resolved by the parties entering into an Agreed Order Modifying Automatic Stay on July 29, 2005.

In the agreed order, the debtors agreed to make monthly payments in the amount of $1,251.16 per month. However, because the debtors' mortgage is an adjustable rate mortgage, the debtors also agreed to make all payments in accordance with notification by Ocwen.

After the entry of the agreed order, the debtors defaulted on the mortgage payments. This default prompted Ocwen to notify the debtors on January 20, 2006, that the stay had been terminated pursuant to the terms of the agreed order.

The debtors made certain payments in order to cure the deficiencies noted by Ocwen and then filed a motion requesting that the court determine that they were current under the agreed order. Ocwen did not respond to the debtors' motion, and on February 14, 2006, the court reinstated the automatic stay. The court reaffirmed this ruling on May 17, 2006.

The debtors again defaulted under the terms of their mortgage, and, pursuant to the agreed order, Ocwen notified the debtors on September 20, 2006, of the termination of the automatic stay. Once again, the debtors ask the court to set aside the notice of termination of stay.

The debtors have advanced several arguments for setting aside the second notice of termination of the stay. First, the debtors argue that they believed that the amount of their mortgage payments to Ocwen were the amounts that were fixed in their chapter 13 plan. They say they did not know that once the interest rate adjusted, they would be required to make increased mortgage payments. The court does not find that this argument is credible. First, the agreed order signed by the debtors is clear on its face. It requires the debtors to make payments in accordance with those notifications given to them by Ocwen. In this case, after the debtors

cured their initial series of defaults, they received a notification from Ocwen to make payments in the amount of $1,623.87 per month. And, in response to that notice, the debtors made a correct payment in accordance with that notification. Afterwards, however, the debtors remitted monthly payments to Ocwen, but in amounts less than the required $1,623.87.

During the course of the hearing, it became apparent that the reason the debtors were not making the payments prescribed by Ocwen was because they could not afford to do so, not because they did not fully understand their obligation to make payments in accordance with the adjusted mortgage amount. At the hearing on October 31, 2006, Mr. Hill argued that he anticipated a change in his occupation and expected that he would be in a position to make the required mortgage payment going forward. The implication from this is that the debtors did not have the money to make payments in full, not that they failed to understand the amount of the mortgage payments that were due. Moreover, Ms. Hill confirmed in argument to the court that she was aware of the correct payment amount.

The debtors also argued that the agreed order should be set aside or modified because they did not understand it when they entered into it. Mr. Hill argued that had they fully understood the terms of the agreed order, they would not have entered into it. It appears that Mr. Hill takes issue with the requirement in the agreed order to make regular mortgage payments and that portion of the order providing for the lifting of the stay upon default. This argument is likewise not persuasive. First, the obligation of the debtors under the agreed order is clear on both of those points. Second, pursuant to section 1322(b)(2) of the Bankruptcy Code, the debtors are not authorized to modify the terms of their mortgage, except for placing pre-petition arrearages in their chapter 13 plan. Consequently, the argument that the debtors would not have

agreed to make timely mortgage payments going forward not only is not logically supportable, it is not legally supportable.

Likewise, the notion that the debtors would not have agreed to permit the stay to be lifted if they defaulted on their mortgage is not defensible. Provisions providing for the termination of the automatic stay upon default not only are routine in agreed orders, but in orders issued without agreement. While the debtors may never have agreed to the termination-upon-default provision of the agreed order had they fully understood it, the court would have imposed such a provision upon the debtors in any contested hearing.

Finally, the debtors argue that after the court reinstated the stay, the debtors believed that the agreed order was no longer operative. Consequently, they believed that if they failed to make full payment to Ocwen, their default would not result in a termination of the automatic stay. The debtors suggest that they were at liberty to pay whatever amounts they could in any given month, with their default having no consequence except that when confronted by Ocwen they would have to modify their plan in order to catch up on the deficient payments.

Once again, the court does not find the debtors' argument to be credible. The agreed order is clear on the consequences of default and nothing in the court's order setting aside the notice of termination of stay purported to set aside the agreed order itself. Consequently, the debtors' alleged belief that the agreed order had simply ceased to be operative in light of the court's order setting aside the notice of termination is neither credible nor reasonable.

The court has taken into consideration the fact that the debtors are representing themselves pro se, and that they are not well versed in legal matters. However, given the numerous excuses tendered by the debtors as to why the court should excuse their most recent series of defaults, the court is convinced that this is a situation in which the debtors simply

4

cannot afford to meet their adjusted mortgage obligations. The possibility that the debtors would not be able to meet their mortgage obligations going forward was contemplated by the parties when they signed the agreed order, and the stay-termination provision addresses that eventuality.

Ocwen has acted reasonably in this case. It entered into an agreed order permitting the debtors to cure their initial post-petition defaults. After initial defaults under the agreed order, Ocwen then permitted the debtors to reinstate the stay by coming current under the mortgage. The debtors have not made a full mortgage payment to Ocwen since at least March 2006 and yet Ocwen did not send its notice of termination of stay until September 20, 2006. Ocwen has been more lenient with the debtors than is required by the agreed order. Therefore, grounds to set aside the second notice of termination of stay do not exist in this case.

After the court announced its ruling on the motion to reinstate the stay, the debtors asked the court to stay its order while they pursued other options to deal with the mortgage. The court construed this as a motion for stay pending appeal and denied it. The court denied the motion for stay pending appeal because the court's order denying the debtors' motion did not lift the automatic stay. The automatic stay was terminated in September 2006 when Ocwen filed its notice of termination of stay. Therefore, staying the court's order denying the debtors' motion would not grant effective relief to the debtors in any event. Second, to the extent that the requested stay would effectively preclude Ocwen from going forward with its foreclosure sale, the court finds that any such relief is not appropriate inasmuch as the court finds that the debtors are not likely to prevail on appeal.

IT IS SO ORDERED.

# # # END OF ORDER # # #